# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GROM, | Case No. 1:18-cv-01361-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

On October 2, 2018, Plaintiff David Grom ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act (the "Act").  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 9.)

## II.     FACTUAL BACKGROUND

On June 25, 2014, Plaintiff protectively filed an application for DIB and SSI payments, alleging he became disabled on December 31, 2012 due to depression. (Administrative Record ("AR") 129, 172.) Plaintiff was born on May 21, 1965 and was 47 years old as of the alleged onset date. (AR 144.) Plaintiff has a high school education, past work experience as a machine operator, warehouse worker labor stores, construction worker, and van driver, and last worked full-time in approximately 2011. (AR 51–52, 91.)

**A.     Relevant Medical Evidence**

**1.     Aspen Family Medical Group of Modesto, Inc.**

In approximately 2013, Plaintiff established care with Aspen Family Medical Group of Modesto, Inc. ("AFM"). (*See* AR 464.) On September 15, 2013, AFM[2] noted that Plaintiff's "medication [was] still making [his] teeth grind" and causing him anxiety. (AR 464.) In April 2014, Plaintiff reported "suicidal thoughts" and that he had pain and swelling in his left foot. (AR 455–56.) In an undated note, AFM stated that Plaintiff reported for a follow up on his depression, and reported "some impairment" on his medication. (AR 451.) AFM saw Plaintiff for a "discuss[ion] about depression" on December 8, 2015. (AR 490.)

**2.     Ken Erickson, F.N.P.**

On July 22, 2014, family nurse practitioner Ken Erickson completed a mental capacity assessment for Plaintiff. (AR 468–70.) Mr. Erickson diagnosed Plaintiff with "major depressive disorder with anxiety." (AR 468.) Mr. Erickson opined that Plaintiff had moderate impairment in the ability to remember locations and work procedures, understand, remember, and carry out simple or detailed instructions, sustain an ordinary routine with special supervision, work in coordination with others, make simple work-related decisions, interact appropriately with the general public, get along with coworkers or peers without distracting them, maintain socially appropriate behavior, respond appropriately to changes in the work setting, be aware of normal hazards, travel in unfamiliar places, and set realistic goals; and marked limitation in the ability to maintain attention

---

[2] The treatment notes submitted from AFM do not indicate what individual evaluated or treated Plaintiff, and simply have boxes for the assigned "MA" to initial. (*See, e.g.,* AR 464.) Thus, this section refers to action taken by the individual evaluating Plaintiff as being taken by AFM.

2

and concentration for extended periods, perform activities within a schedule, complete a normal work day or work week without interruptions from psychologically based symptoms, and perform at a consistent pace. (AR 468–70.) Mr. Erickson also opined Plaintiff would miss three days of work per month. (AR 469.)

### 3. Doctors Medical Center of Modesto

Plaintiff was admitted to Doctors Medical Center of Modesto on July 28, 2016 for right-sided hemiparesis. (AR 514.) Internist Kristofer Richter, D.O., noted that Plaintiff underwent a lumbar puncture upon admission, and an MRI of the spine showed lesions in his spinal cord around C3-C4. (AR 514.) Dr. Richter also noted that Plaintiff had "some sort of a demyelinating condition that we do not have an exact diagnosis at discharge." (AR 514.) Neurologist Jeffrey Levin, M.D., saw Plaintiff for a follow up after his July 28, 2016 procedure. (AR 518–19.) Dr. Levin stated that Plaintiff "presented with a 3-4 day history of sensory changes in his right arm and right leg" but he was "without any significant weakness." (AR 518.) Dr. Levin also noted that Plaintiff appeared to have some "demyelination" in his spine. (AR 518.) Plaintiff underwent a follow-up cervical spine MRI on July 28, 2016. (AR 642.) Imaging showed advanced disc degeneration, mild central spinal canal stenosis, and severe bilateral neural foraminal stenosis. (AR 642.) Later imaging showed severe discogenic disease. (AR 531.) Plaintiff was diagnosed with cervical myelopathy. (AR 520.) On August 1, 2016, Plaintiff was discharged, and Dr. Levin noted that Plaintiff "still complains of some numbness in his right arm and leg" and should follow up in the next 6-8 weeks. (AR 560.)

### 4. Satish Sharma, M.D.

On January 4, 2017, internist Satish Sharma completed an Internal Medicine Evaluation after examining Plaintiff. (AR 694–703.) Dr. Sharma noted that Plaintiff's complaints included numbness in the right arm, neck pain, low back pain, syncopal episodes, and depression. (AR 700.) Dr. Sharma diagnosed Plaintiff with neck and back pain with intermittent radicular pain upper extremities, numbness in the right arm, cervical radiculopathy, West Nile virus, posttussive syncope, and depression. (AR 702.) Dr. Sharma opined that Plaintiff could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently, walk, sit and/or stand for 6 hours of an 8-hour workday, stoop, kneel crouch and crawl occasionally, should not drive, operate heavy machinery or

work at unprotected heights, and had limitations in feeling objects with his right hand. (AR 697, 702–03.)

### 5. Patricia Spivey, Psy.D.

On November 24, 2014, psychologist Patricia Spivey completed a Mental Status Disability Report after examining Plaintiff. (AR 473–75.) Dr. Spivey noted that Plaintiff reported he had depression and took medication for it, had been divorced for ten years and is now homeless. (AR 473.) Dr. Spivey stated Plaintiff had four DUIs in the past, and has been sober since his last DUI. (AR 473.) Dr. Spivey opined that Plaintiff had no limitation in his ability to follow simple or complex instructions, maintain adequate pace or persistence, and communicate effectively in writing; mild limitation in his ability to maintain adequate attention/concentration, adapt to changes in job routine, and verbally communicate effectively; moderate limitation in his ability to withstand the stress of a routine work day and interact appropriately with others, and marked limitation in his ability to maintain emotional stability. (AR 475.)

### 6. State Agency Physicians

On December 2, 2014, C. Bullard, M.D. a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's physical impairments and determined that Plaintiff's physical impairments were non-severe. (AR 121.) Upon reconsideration, on March 24, 2015, another Disability Determinations Service medical consultant, A. Nasrabadi, M.D., affirmed Dr. Bullard's findings. (AR 149.)

On December 26, 2014, R. Ferrell, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's mental impairments. (*See* AR 124.) In assessing Plaintiff's mental residual functional capacity (RFC),[3] Dr. Ferrell opined that Plaintiff was moderately limited in his ability to maintain attention and concentration, perform activities within a

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

schedule, accept instructions, get along with coworkers, maintain socially appropriate behavior, respond appropriately to changes, and set realistic goals. (AR 124–25.) Dr. Ferrell further stated that Plaintiff had no limitation in any other area. (AR 124–25.)

Upon reconsideration, on March 27, 2015, another Disability Determinations Service medical consultant, E. Aquino-Caro, M.D., affirmed Dr. Ferrell's findings as to the severity of Plaintiff's impairments and his mental RFC. (AR 151–53.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 2, 2015, and again on reconsideration on March 27, 2015. (AR 172–76, 179–84.) On May 11, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 186–87.)

On December 1, 2016, Plaintiff appeared without counsel and testified briefly before an ALJ as to his alleged disabling conditions. (AR 79–114.) Plaintiff testified he became "disabled" in approximately 2012 due to depression, as he was homeless and "wanted to commit suicide[.]" (AR 94.) Plaintiff stated that in approximately August 2016, he had a back injury that required hospitalization and surgery. (AR 95.) Plaintiff testified that with the resulting back and neck pain, he is only able to walk about ten minutes at a time, or a total of an hour and a half in a day, and stand about fifteen minutes at a time and an hour and a half in a day. (AR 99.) Plaintiff stated he does not handle stress well but was not getting mental health treatment. (AR 102.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a machine operator, Dictionary of Occupational Titles (DOT) code 699.682-018, which was medium work with a specific vocational preparation (SVP)[4] of 5; a warehouse worker, laborer stores, DOT code 922.687-058, which was medium work with a SVP of 2; a construction worker, DOT code 869.664-014, which was medium work with a SVP of 4; and a van driver, DOT code 913.663-018, which was light work with a SVP of 3. (AR 104–06.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background. (AR 106.) The VE was also to assume

---

[4] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

1 this person was able to lift and carry twenty pounds frequently, sit for six hours of an eight-hour workday, stand and/or walk for six hours of an eight-hour workday, precluded from climbing ladders, ropes, and scaffolds, precluded from working around unprotected heights and hazardous machinery, limited to occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching and crawling, able to perform simple, repetitive tasks, and limited to no more than occasional interaction with supervisors co-workers, and the public. (AR 106.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 109.) The VE testified such a person could perform other light, unskilled, SVP 2 jobs in the national economy, however, including: assembler, DOT code 712.687-010, with approximately 330,000 jobs available in the national economy; cleaner, DOT code 323.687-014, with approximately 560,000 jobs available; and packing line worker, DOT code 753.687-038, with approximately 310,000 jobs available. (AR 109.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person is able to lift and carry ten pounds frequently, and is able to sit for six hours and stand/walk for two hours of an eight-hour workday. (AR 109.) The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the assembler job, and could perform the job of a nut sorter, DOT code 521.687-086, with approximately 17,000 jobs available, and almond blancher, DOT code 521.687-010, with approximately 800 jobs available. (AR 110.)

**C.    The ALJ's Decision**

In a decision dated June 1, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 58–72.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 60–71.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since December 31, 2012, the alleged onset date (step one). (AR 60.) At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine degenerative disc disease and cervical myelopathy"; "thoracic spine degenerative disc disease"; seizures; "post tussive syncope"; "positivity for West Nile virus"; depression; and anxiety. (AR 61.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 62.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for about six hours of an eight-hour workday. [Plaintiff] cannot climb ladders, ropes, and scaffolds. He cannot work around unprotected heights and hazardous machinery. [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can perform simple repetitive tasks. [Plaintiff] can have no more than occasional interaction with supervisors, co-workers, and the public.

(AR 63.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 65.) At step five, the ALJ found that Plaintiff could not perform any past relevant work but that jobs exist in significant numbers in the national economy that Plaintiff could perform. (AR 69–71.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 25, 2018. (AR 6–11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in evaluating Plaintiff's physical symptom statements and mental symptom statements and failed to account for all of Plaintiff's limitations in the RFC assessment. (*See* Doc. 21 at 6.) The Commissioner responds that the ALJ properly evaluated Plaintiff's credibility and formulated Plaintiff's RFC. (Doc. 22 at 3–11.) For the reasons stated

below, the Court agrees with Plaintiff that the ALJ erred in her evaluation of Plaintiff's physical symptom statements, and will remand the case on that basis.

**A.      The ALJ Erred in Her Evaluation of Plaintiff's Physical Symptom Statements.**

   **1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d

10

1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

**2.     Analysis**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 65.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 65.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for her adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ found that Plaintiff's symptom statements as to his physical impairments were less than credible because they were inconsistent with the objective medical evidence and the medical opinion evidence. (AR 65–70.) Plaintiff contends that the ALJ failed to properly evaluate his physical symptom statements. (Doc. 21 at 6.) The Court agrees; the ALJ erred in discounting Plaintiff's credibility as to his symptoms of physical impairments, and that error was not harmless.

Plaintiff testified that after his 2016 back injury and surgery, with the resulting back and neck pain, he is only able to walk about ten minutes at a time, or a total of an hour and a half in a day, and stand about fifteen minutes at a time or an hour and a half in a day. (AR 95, 99.) He further testified that he is still numb on the right side of his body, has pain in his pelvic area, and he walks with a limp. (AR 95–96.) The ALJ discounted Plaintiff's allegations regarding the severity of his physical symptoms because they were inconsistent with the objective medical evidence and opinion evidence. (AR 65, 67–68.)

The Court finds that neither reason offered by the ALJ constitutes a clear and convincing reason to discredit Plaintiff's physical symptom statements.  First, as to the alleged inconsistency with the opinion evidence, the ALJ stated that Plaintiff's allegations of physical symptoms "are not consistent with medical opinions that suggest that [Plaintiff] has considerable work-related abilities," namely, the opinions of the state agency physicians and Dr. Sharma.  (AR 67.)  However, the ALJ does not articulate which of Plaintiff's statements are contradicted by which parts of the opinions of the state agency physicians and Dr. Sharma.  The ALJ does not even specifically mention any statement Plaintiff gave during his testimony that she finds to be not credible.  This is required of the ALJ because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence, which the Court may not do.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").  This is highlighted by the fact that the ALJ found that Plaintiff's testimony was contradicted by the state agency physicians' opinions, thus Plaintiff's testimony was untrustworthy, but then found that the state agency physicians' opinions were unsupported and entitled to little weight.  (AR 67.)  Thus, the Court finds this is not a valid clear and convincing reason to discount Plaintiff's credibility.

As to the alleged inconsistency with the objective medical evidence, the Court finds this is not a valid clear and convincing reason to discount Plaintiff's credibility either.  As with the ALJ's discussion of the medical opinions, the ALJ's decision provides little to no guidance as to which disabling effects the ALJ believes to be undermined by which aspects of the objective medical evidence in the record.  As stated above, to be clear and convincing, the ALJ must specify which of the claimant's complaints are contradicted by which clinical observations, and the ALJ failed to do that here.  *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (where there is no evidence of malingering, "the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which*

evidence contradicted that testimony'") (quoting *Brown–Hunter*, 806 F.3d at 489, 494); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (holding that an ALJ's determination that a claimant was not credible because his "complaints are 'inconsistent with clinical observations' . . . . could satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not specify what complaints are contradicted by what clinical observations.")  Further, the treatment notes mentioned by the ALJ do not appear to support the ALJ's conclusion that the record contains mostly "mild findings" as to Plaintiff's physical impairments, and appear to support a contrary conclusion. (*See, e.g.,* AR 65 (noting that Plaintiff had nonspecific focal hyperintense lesion in the spinal cord, myelinating discs, "advanced" disc degeneration, central spinal canal stenosis, "severe" bilateral neural foraminal stenosis, "severe" discogenic disease, "moderate" ventral spinal cord compression, and upper cervical demyelination.))

In sum, the ALJ failed to sufficiently specify which specific statements by Plaintiff were contradicted by which specific parts of the record, and sufficiently explain how they are contradictory. Thus, the Court cannot find that the reasons offered by the ALJ for discounting Plaintiff's physical symptom statements were valid, clear and convincing. *See Brown–Hunter*, 806 F.3d at 494.  The Court will remand the case on that basis for the ALJ to reevaluate Plaintiff's symptom statements and reformulate Plaintiff's RFC, if necessary.

**B.      The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Plaintiff's credibility was harmless, and the record establishes that the ALJ's error was not harmless. The Court agrees with Plaintiff that if the ALJ had credited Plaintiff's physical symptom statements regarding certain functional abilities and included appropriate limitations in the RFC, that may have changed the disability determination. (*See* Doc. 21 at 12–13.) This is especially true here, where Plaintiff alleged fairly significant limitations, including that he could only walk or sit for limited periods of time throughout the day. (*See* AR 95, 99.) Thus, the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

**C.    The ALJ's Error Warrants Remand for Further Proceedings**

The Commissioner and Plaintiff request that if the ALJ's decision is reversed, the Court remand the case to the Commissioner for further proceedings, as opposed to awarding benefits. (Doc. 21 at 13–14; Doc. 22 at 11 n.4.) The Court agrees with Plaintiff that "the record requires further development," and will remand the case the Commissioner to allow the ALJ to re-assess Plaintiff's credibility and incorporate any necessary limitations in the RFC. (*See* Doc. 21 at 14.)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to

remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. If the ALJ changes her evaluation of Plaintiff's subjective complaints, she should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific, clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so."). Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust her RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled--either because he has the RFC to perform the requirements of his past relevant work or because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed

15

necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, she can then provide an adequate discussion of the specific testimony she is discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate her conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

Based on the foregoing, the Court will remand this case for further proceedings.

**D.    The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's symptom statements regarding his physical impairments, the Court does not determine Plaintiff's additional assertions of error regarding the ALJ's credibility determination related to Plaintiff's mental symptom statements and her formulation of the RFC. (*See* Doc. 21 at 10–12); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in

1  favor of Plaintiff David Grom and against Defendant Andrew Saul, Commissioner of Social
2  Security.

IT IS SO ORDERED.

Dated:   **May 18, 2020**                                  /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE